**EXHIBITS 1 and 2**
**to Plaintiff Bank of America's**
**Refiled Motion to Enforce Settlement**

1. [Redacted] Executed Memorandum of Settlement dated June 12, 2024
2. [Redacted] Draft Settlement Agreement with exhibits

# EXHIBIT 1

## MEMORANDUM OF SETTLEMENT

This is a memorandum of settlement between Bank of America, N.A. ("Bank"), as Plaintiff, and Ztar Mobile, Inc. ("Ztar") and Kevin Haddad ("Haddad"), as Defendants, resolving all claims by and between the parties in Civil Action No. 3:23-cv-00826-BN, pending in the United States District Court for the Northern District of Texas (the "Lawsuit"). The material terms of the settlement are as follows:



6.      The parties, through their attorneys, shall work together to prepare and finalize settlement documents in a timely manner. In the event any issues arise in connection with the preparation or substance of final settlement documents, the parties will work with the mediator to resolve any disagreements.

1

7. ████████████████████████████████████████

The parties further agree, except as they may hereafter agree in writing, to maintain confidentiality with respect to all verbal and written communications made or used in connection with the dispute resolution process, as provided by the Texas Alternative Dispute Resolution Procedures Act, (Tex. Civ. Prac. & Rem. Code Ann. §§ 154.053 & 154.073), and that the mediator will never be subpoenaed or called as witness by any party to this dispute.

It is also agreed that: (1) the attorneys for said parties have prepared and approved this agreement and that the parties have relied on the legal advice of their respective counsel in effecting this settlement; (2) the parties enter into this agreement on their own voluntary will and accord; and (3) this agreement is binding and irrevocable. The parties further agree to execute and deliver such additional agreements and documents as shall be necessary to carry out the purposes of this agreement.

Dated:  June 12, 2024

Bank of America, N.A.

By: _____

Title: _____

Counsel _____

Ztar Mobile, Inc.

By: Kevin Haddad

Title: President

Counsel _____

_____

Kevin Haddad

Counsel _____

# EXHIBIT 2

**SETTLEMENT AND RELEASE AGREEMENT**

This Settlement Agreement (the **"Agreement"**) is made as of the 31st day of July, 2024 (**"Agreement Date"**), by and between Bank of America, N.A. (**"Lender"**), on the one hand; and Ztar Mobile, Inc. (**"Borrower"**) and Kevin T. Haddad (**"Haddad"** and, collectively with Borrower, **"Borrower Parties"**), on the other hand.  Lender and Borrower Parties are sometimes referred to collectively in this Agreement as the **"Parties."**

**RECITALS:**

**WHEREAS,** on or around March 29, 2019, Lender and Borrower entered into that certain Loan Agreement by which Lender agreed to provide Borrower with a revolving line of credit in the maximum principal amount of $6,000,000.00 USD (**"Loan"**).  The Loan Agreement was modified (i) pursuant to that certain Amendment No. 1 Loan Agreement, which is dated as of October 2, 2020; (ii) pursuant to that certain Amendment No. 2 Loan Agreement, which is dated as of January 28, 2021; and (iii) pursuant to that certain Amendment No. 3 Loan Agreement, which is dated as of January 31, 2022.  Lender alleges that Borrower's Loan obligations are secured by a valid, enforceable, perfected senior-priority lien interest in and to all, or virtually all, of Borrower's assets as set forth in that certain Security Agreement (Multiple Use) dated March 29, 2019, executed by Borrower in favor of Lender; and those UCC-1 Financing Statements filed in the Texas Secretary of State's Office at 13-0027526107 and 16-0007032796, as the same have been continued from time to time. Borrower Parties disagree.

**WHEREAS,** in connection with the Loan, on or about March 29, 2019, Haddad executed and delivered to Lender that certain Continuing and Unconditional Guaranty (**"Guaranty"**). The Loan Agreement, its three written amendments, the Security Agreement (Multiple Use), and the Guaranty are collectively referenced herein as the **"Loan Documents."**

**WHEREAS,** the Loan matured, and the entire outstanding balance became due and owing, on March 31, 2022.  As of June 3, 2024, the outstanding principal balance of the Loan is $5,397,700.71, the outstanding unpaid accrued interest at the non-default rate is $855,988.80, and the outstanding unpaid accrued interest at the default rate is $668.790.14.  In addition, the Loan Documents authorize Lender to recover its reasonable fees and legal expenses incurred which, as of July 10, 2024, total $83,478.96.  The sum of the outstanding principal balance, unpaid accrued interest, and legal expenses is $7,005,958.61 (the **"Balance"**).

**WHEREAS,** Lender initiated a lawsuit against Borrower Parties in the United States District Court for the Northern District of Texas, Dallas Division (the **"Court"**), Case No. 23-cv-826 (the **"Litigation"**) seeking recovery of the Balance.

**WHEREAS,** the Parties engaged in good faith to mediate the dispute in an attempt to resolve the Litigation.  In order to avoid additional expense, inconvenience, and consequences, the Parties have agreed to settle and resolve the Litigation in accordance with and subject to the terms and conditions as set forth herein.

**NOW, THEREFORE,** the Parties hereto hereby agree as follows:

1.      **INCORPORATION OF RECITALS.** The Recitals set forth above are true and correct.

**2.** ███████████████████████████████████████████
████████████

**2.1** █████████████████████████████████████████
██████████████

a. 

b.

c.

d.

e.

**Wire Instructions:**

**Mailed Payment:**



**2.2**

**2.3**

3.    <u>MUTUAL RELEASE</u>.    In consideration of the mutual agreements, covenants and releases contained herein, and with the exception of the rights and obligations created or preserved by this Agreement:

3.1    **Release Of Lender.**    Upon the Agreement Date, Borrower Parties and their respective successors, assigns, parents, subsidiaries, affiliates, predecessors, employees, agents, heirs, executors, as applicable, both present and former (collectively, the "**Borrower Release Parties**"), jointly and severally, release and forever discharge Lender, its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, successors and assigns, both present and former (collectively the "**Lender Released Parties**") of and from any and all manner of action and actions, cause and causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in law or in equity against Lender and/or Lender Released Parties they ever had, now have or which any of the Borrower Release Parties ever had or now has, upon or by reason of any manner, cause, causes or thing whatsoever, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated and including but not limited to any claim that relates to, in whole or in part, directly or indirectly the Litigation and the loan transactions giving rise to the Litigation.

3.2    **Release Of Borrower Parties.**    Upon the Agreement Date, Lender Released Parties jointly and severally, release and forever discharge Borrower Release Parties of and from any and all manner

of action and actions, cause and causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in law or in equity against Borrower Released Parties they ever had, now have or which any of the Lender Release Parties ever had or now has, upon or by reason of any manner, cause, causes or thing whatsoever, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or anticipated as to any claim that relates to, in whole or in part, directly or indirectly the Litigation and the loan transactions giving rise to the Litigation, expressly subject to the terms and conditions of this Agreement including Lender's right to seek entry of and enforce the Judgment upon the occurrence of a default hereunder by Borrower Parties. Lender's release as set forth herein does not pertain to any credit, loan, or other financial arrangement between Lender and Borrower Parties, if any, other than the loan transactions giving rise to the Litigation.

4.    **CONFIDENTIALITY.**  Each Party agrees that the terms of the settlement described in this Agreement and as such may have been previously discussed among the Parties are and shall remain confidential.  The Parties agree that such terms shall not be disclosed to any other person unless otherwise authorized by the other Party; provided, however, that either of the Parties may disclose the terms of the settlement to their respective attorneys, accountants, or other retained professionals for the purpose of rendering advice so long as such persons are informed by the disclosing Party as to the confidential nature of such information and are directed by the disclosing Party to treat such information confidentially and to use it only in connection with their representation of the disclosing Party.  Nothing in this paragraph shall prevent Lender from disclosing the terms of this Agreement to fulfill obligations otherwise required by Lender in the ordinary course of Lender's business, including but not limited to disclosures to regulators or as otherwise required by court order.

5.    **INTENTIONALLY OMITTED.**

6.    **CONDITIONS SUBSEQUENT.**  Notwithstanding the foregoing, if any one or more of the Conditions Subsequent as defined in the subsections enumerated below (**"Conditions Subsequent"**) occurs, then the following provisions shall apply:

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

The Conditions Subsequent are as follows:

**6.1.**    ████████████████████████████████████████████████████████████
████████████████████████████████████; or

**6.2.**    **Avoidance.**  Any payment made pursuant to this Agreement, or any portion of such payment, is rescinded, avoided, set aside, rendered void and/or undone or otherwise made unavailable to Lender, including in connection with an action by any creditor of either of the Borrower Parties or upon the insolvency, Bankruptcy or reorganization of either of the Borrower Parties, or otherwise; or

**6.3.**    **Representations, Warranties, Covenants and Other Agreements.**  Any of the representations, warranties, covenants or other agreements of Borrower Parties contained in

Section 7 of this Agreement or ███████████████████████████████████ ████████████ shall have been false or incorrect in any material respect when made;

**6.4.** **Unauthorized Disclosure.** Any breach by Borrower Parties to keep the terms of this Agreement confidential pursuant to Section 4 of this Agreement; or

**6.5** **Litigation.** Borrower Parties, or any person claiming by or through Borrower Parties, commences, joins in, assists, cooperates in or participates as an adverse party or as an adverse witness (subject to compulsory legal process which requires testimony) in any suit or other proceeding against Lender or any of the Lender Released Parties relating in any way to the Judgment, the Loan, the transactions giving rise to the Litigation, the Litigation, or this Agreement, except that it shall not be a default if Borrower Parties initiate and pursue a suit alleging, in good faith, a material breach by Lender of this Agreement; or

**6.6** **Bankruptcy.** Either of the Borrower Parties becomes the subject of an insolvency proceeding, by either voluntary or involuntary petition, within ninety-one (91) days after any payment made pursuant to this Agreement, and such insolvency proceeding is not dismissed within ninety (90) days after the filing of the petition commencing the insolvency proceeding.

**7.** **OTHER AGREEMENTS, ACKNOWLEDGMENTS, REPRESENTATIONS AND WARRANTIES.** Each of the Parties acknowledges, represents, warrants, affirms and confirms the following:

**7.1** Each of the Parties has read this Agreement, understands the effect and scope of this Agreement and has had the assistance of separate legal counsel of his choice in carefully reviewing, discussing and considering all terms of this Agreement or has elected to enter into this Agreement without consulting legal counsel.

**7.2** Each of the Parties' execution and delivery of this Agreement is not based upon reliance upon any representation, understanding or agreement not expressly set forth herein. Neither of the Parties has made any representations to the other party not expressly set forth herein.

**7.3** Each of the Parties executes and delivers this Agreement as his/its free and voluntary act, without any duress, coercion or undue influence exerted by or on behalf of any other party.

**7.4** Each of the Parties has full and complete authorization and power to execute this Agreement in the capacity herein stated. This Agreement is a valid, binding and enforceable obligation of the Parties and does not violate any law, rule or regulation, or any contract or agreement to which either of the Parties is a party.

**7.5** Each of the Parties has not conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the release set forth above in Section 3.1 of this Agreement.

**8.** **SEVERABILITY.** If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, that same court may determine if the remainder of the provisions shall remain in full force and effect and shall be affected, impaired or invalidated or as otherwise determined. This Agreement is, and shall be deemed to be, the product of joint drafting by the Parties hereto and shall not be construed against any of them as the drafter hereof.

9.      **GOVERNING LAW.**  Except to the extent that any law of the United States may apply, this Agreement shall be governed and interpreted according to the laws of Texas (the **"Governing Law State"**), without regard to any choice of law, rules or principles to the contrary.  Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of the Parties under federal law.

10.      **VENUE AND JURISDICTION.**  Each of the Parties agrees that any action or suit arising out of or relating to this Agreement shall be filed with the Court.  If a Party does commence an action or suit arising out of or relating to this Agreement, each of the Parties agrees that the case may be filed in federal court or state court in the Governing Law State.  Each of the Parties consents to personal jurisdiction and venue in such forum and waives any right to contest jurisdiction and venue and the convenience of any such forum.  The provisions of this section are material inducements to the Parties' acceptance of this Agreement.

11.      **COUNTERPARTS.**  This Agreement may be executed in multiple identical counterparts, each of which when duly executed shall be deemed an original, and all of which shall be construed together as one agreement.  This Agreement will not be binding on or constitute evidence of a contract between the Parties hereto until such time as each Party has executed and delivered its executed counterpart of the Agreement to the other Party.

12.      **TIME IS OF THE ESSENCE.**  Time shall be of the essence with respect to each and every of the various undertakings and obligations of the Parties as set forth in the Agreement.

13.      **ENTIRE AGREEMENT.**  This Agreement and all documents, instruments, and agreements executed in connection herewith incorporate all of the discussions and negotiations between Borrower Parties and Lender, either expressed or implied, concerning the matters included herein and in such other documents, instruments and agreements, any statute, custom, or usage to the contrary notwithstanding. No such discussions or negotiations shall limit modify, or otherwise affect the provisions hereof. None of the terms or provisions of this Agreement, may be changed, waived, modified, discharged, or terminated except by an instrument in writing executed by the party against whom or which enforcement of the change, waiver, modification, discharge or termination is asserted.   None of the terms or provisions of this Agreement shall be deemed to have been abrogated or waived by reason of any failure or failures to enforce the same.

14.      **SUCCESSORS AND ASSIGNS.**  Subject to and limited by the release provisions set forth in Paragraphs 3.1 and 3.2 herein, all rights of the Parties hereunder shall inure to the benefit of each Party's successors and assigns, and all obligations of the Parties hereunder shall bind the successors, assigns, heirs, administrators, executors and legal representatives and estate of each Party.

15.      **COOPERATION.**   At all times following the date of this Agreement, each of the Parties agrees to execute and deliver, or to cause to be executed and delivered, such documents and to do, or cause to be done, such other acts and things as might reasonably be requested by the other Party to assure that the benefits of this Agreement are realized by the Parties.

16.      **ATTORNEYS' FEES.**  Unless otherwise set forth in this Agreement, each Party shall be responsible for the payment of its own attorneys' fees and costs and expenses incurred in connection with this Agreement.  Nevertheless, in any action or proceeding to enforce this Agreement, the prevailing party shall be entitled to its attorneys' fees and costs.

17.    **NO THIRD PARTY BENEFICIARIES.**  Nothing in this Agreement, expressed or implied, is intended to confer upon any party other than the Parties hereto any rights, remedies, obligations or liabilities under or by reason of this Agreement or the resolution effectuated hereby.

18.    **JURY WAIVER.** The Parties irrevocably and voluntarily waive any right they may have to a trial by jury as permitted by law in respect of any claim asserted in connection with this Agreement. Furthermore, the Parties irrevocably and voluntarily waive any right they may have to a trial by jury to the extent permitted by law in respect of such claim.  **THE PARTIES AGREE AND UNDERSTAND THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY LAW. EACH PARTY HERETO (i) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (iii) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

19.    **WAIVER OF CLASS ACTIONS.**  The terms **"Claim"** or "**Claims"** refer to any disputes, controversies, claims, counterclaims, allegations of liability, theories of damage, or defenses between Lender, its subsidiaries and affiliates, on the one hand, and the Borrower Parties on the other hand. Whether in state court, federal court, or any other venue, jurisdiction, or before any tribunal, the Parties agree that all aspects of litigation and trial of any Claim will take place without resort to any form of class or representative action. Thus the Parties may only bring Claims against each other in an individual capacity and waive any right they may have to do so as a class representative or a class member in a class or representative action.  **THIS CLASS ACTION WAIVER PRECLUDES ANY PARTY FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION REGARDING A CLAIM.**

20.    **NOTICES**.  Unless otherwise provided in this Agreement, all notices required under this Agreement shall be personally delivered or sent by first class mail, postage prepaid, or by overnight courier, to the addresses on the signature page of this Agreement and that Party's current attorney's, in the Litigation, address, or sent by facsimile to the fax number(s) listed on the signature page, or to such other addresses as Lender and the Borrower Parties may specify from time to time in writing (any such notice a "Written Notice").  Written Notices shall be effective (i) if mailed, upon the earlier of actual receipt or five (5) days after deposit in the U.S. mail, first class, postage prepaid, (ii) if sent by facsimile, when transmitted, or (iii) if hand-delivered, by courier or otherwise (including telegram, lettergram or mailgram), when delivered.  In lieu of a Written Notice, notices and/or communications from Lender to the Borrower Parties may, to the extent permitted by law, be delivered electronically (i) by transmitting the communication to the email address provided by the Borrower Parties on the signature page, and Jose@bptriallaw.com or to such other email address as the Borrower Parties may specify from time to time in writing (any such notice, an **"Electronic Notice"**).  Electronic Notices shall be effective when the communication is sent to the Borrower Parties' electronic address(es) as described herein.

21.    **NOTICE OF FINAL AGREEMENT.**    **THIS WRITTEN SETTLEMENT AGREEMENT EXECUTED IN CONNECTION HEREWITH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

[SIGNATURE PAGES TO FOLLOW]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

**BORROWER:**
**Ztar Mobile, Inc.**


By:_____
Name: Kevin Haddad
Title: President
**Address:**
_____
_____
_____
_____
Email:  _____


**GUARANTOR:**


_____
**KEVIN T. HADDAD**, an individual
**Address:**
_____
_____
_____
_____
Email:  _____


**LENDER:**
**Bank of America, N.A.**


By:_____
Name:  John Clarke
Title:SVP, SAG Sr. Portfolio Officer
**Address:**
Bank of America, N.A.
Attn:  John Clarke
Mail Stop MO8-050-01-33
2001 NE 46th Street
Kansas City, MO  64116-2051
Email:  _____

**EXHIBIT 2.2**



**EXHIBIT 2.3**







[SIGNATURE PAGES OF THE PARTIES FOLLOWS]

Approved as to form and content:


_____
Kyle S. Hirsch, Esq. (TX Bar No. 24117262)
BRYAN CAVE LEIGHTON PAISNER, LLP
Attorneys for Plaintiff


_____
By: John Clarke
Authorized Representative of Plaintiff Bank of America, N.A.


_____
Jose Portela (TX Bar No. _____)
BECKHAM PORTELA
Attorneys for Defendants


_____
By:  Kevin T. Haddad
Authorized Representative of Defendant Ztar Mobile, Inc.


_____
Defendant Kevin T. Haddad