IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-826-BN |
| | § | |
| ZTAR MOBILE, INC. and KEVIN T. | § | |
| HADDAD, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Two motions filed by Plaintiff Bank of America, N.A. ("BANA") are pending in this breach-of-contract lawsuit, which is before the undersigned United States magistrate judge for all purposes under 28 U.S.C. § 636(c). *See* Dkt. No. 19.

BANA moved for summary judgment on its breach-of-contract claims, seeking a money judgment against Defendants Ztar Mobile, Inc. and Kevin T. Haddad for the indebtedness due on a $6,000,000.00 loan and related guaranty and contending that Defendants' affirmatives defenses do not defeat its claims. *See* Dkt. Nos. 41-45, 48, & 49; *see also* Dkt. Nos. 64 & 65 (supplement as to evidence to support the Court's jurisdiction under 28 U.S.C. § 1332).

On June 13, 2024, two days after BANA filed its reply brief in support of summary judgment, the parties informed the Court that this case had settled. *See* Dkt. No. 46.

But, over the next several months, the parties were unable to file appropriate

dismissal papers. *See* Dkt. Nos. 47 & 50-52.

And, on September 11, 2024, the parties filed a joint status report to inform the Court that, at a minimum, their settlement had hit a significant snag but that it was BANA's "contention the parties had already negotiated a resolution and the outstanding issue is documentation," and, so, BANA "intends to promptly file a motion for enforcement of settlement reached at mediation, with a request that the draft settlement documentation be filed under seal due to the confidentiality provisions negotiated by the parties." Dkt. No. 53.

BANA then moved the Court to enforce the parties' settlement negotiated through a mediation that occurred on June 12, 2024, an agreement that was subsequently fleshed out through further negotiations that led to a draft settlement agreement that BANA sent to Defendants for execution on August 1, 2024. *See* Dkt. No. 61; Dkt. No. 61-1 at 3-4 (redacted June 12 mediated settlement agreement ("MSA")); Dkt. No. 62 at 4-5 (sealed unredacted MSA); Dkt. No. 61-1 at 6-21 (redacted August 1 draft); Dkt. No. 62 at 7-22 (sealed unredacted August 1 draft).

Ztar and Haddad opposed BANA's motion to enforce. *See* Dkt. No. 68. BANA filed a reply brief. *See* Dkt. No. 71. And, on February 18, 2025, the Court held a hearing on both motions. *See* Dkt. Nos. 70, 72, 73, & 76-79.

For the following reasons, the Court DENIES the motion to enforce settlement, GRANTS IN PART and DENIES IN PART the motion for summary judgment, and GRANTS BANA leave to file, by **March 31, 2025**, a second motion for summary

judgment as to damages. *See* N.D. TEX. L. CIV. R. 56.2(b).

## Discussion

## I.    The Court denies the motion to enforce settlement.

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994).

"A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement," and, "[s]ince Texas law applies to this case, Texas Rule of Civil Procedure 11 controls." *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (citations omitted); *accord Miller v. Clark Sharp & Reynolds LLC*, No. 4:23-cv-904-O, 2024 WL 3823535, at *2 (N.D. Tex. Mar. 5, 2024).

"Agreements and stipulations are welcomed by courts because they limit the matters in controversy and expedite trial proceedings. Rule 11 ensures that such agreements do not themselves become sources of controversy, impeding resolution of suits. The requirements of Rule 11 are not onerous; the benefits are substantial." *Kennedy v. Hyde*, 682 S.W.2d 525, 530 (Tex. 1984).

"Under Rule 11, a court may enforce a settlement agreement if it is in writing, signed, and filed with the papers as part of the record or otherwise entered on the record." *Miller*, 2024 WL 3823535, at *2 (citations omitted). And, like here, a settlement agreement is commonly "made part of the record due to its contemporaneous filing alongside" a motion to enforce it. *Id.*

"Litigants' Rule 11 agreements are contracts relating to litigation, and thus [courts] construe them under the same rules as a contract." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (citation omitted); *see also Scott v. Livingston*, 628 F. App'x 900, 902 (5th Cir. 2015) ("Because a settlement agreement is a contract, Texas contract law guides our interpretation." (cleaned up)).

So, even where a purported settlement agreement meets Rule 11's more technical requirements – as a signed writing made part of the record – it still "must be a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony." *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)); *see, e.g.*, *Shamrock Psychiatric*, 540 S.W.3d at 561 ("Here, the alleged agreement … was in writing, signed, and filed with the court…. Thus, the dispositive issue is whether the status report contained all of the essential elements of the parties' agreement." (citation omitted)).

"For a contract to be enforceable in Texas, it 'must address all of its essential and material terms with a reasonable degree of certainty and definiteness.'" *Khubchandani v. State Farm Lloyds*, 4:22-cv-488-BP, 2024 WL 4634068, at *2 (N.D. Tex. Mar. 7, 2024) (quoting *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)).

That is because "[a] settlement that contains all 'essential terms' is considered

a binding settlement, while an agreement omitting essential terms is not binding and is merely an agreement to agree." *Scott*, 628 F. App'x at 902 (quoting *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App. – Houston [1st Dist.] 2014)).

Put another way, "[a] binding settlement may exist when parties agree upon some terms, understanding them to be an agreement, and leave other terms to be made later." *Stergiou*, 438 S.W.3d at 744 (citing *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App. – San Antonio 2002, pet. denied)).

But, "[w]hen an agreement leaves essential (or material) matters open for future negotiation and those negotiations are unsuccessful," "the agreement 'is not binding upon the parties and merely constitutes an agreement to agree.'" *Id.* (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); collecting cases; footnote omitted).

"Essential terms are those that, based on case-specific inquiry, the parties 'would reasonably regard as vitally important elements of their bargain.'" *Scott*, 628 F. App'x at 902 (quoting *Stergiou*, 438 S.W.3d at 744, 746); *accord Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 628 (5th Cir. 1985) ("[A]n 'essential' promise denotes one that the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain. Failure to fulfill such a promise, in other words, would seriously frustrate the expectations of one or more of the parties as to what would constitute sufficient performance of the contract as a whole.").

"Texas courts have long 'held that the essential terms for a settlement agreement are the amount of compensation and the liability to be released.'" *Khubchandani*, 2024 WL 4634068, at *3 (quoting *Young v. Ershick*, 617 F. Supp. 3d 563, at 582 (E.D. Tex. 2022) (collecting cases; quoting *Chowning v. Boyer*, No. 03-20-00387-CV, 2021 WL 3233859, at *6 (Tex. App. – Austin July 30, 2021, no pet.))); *see also Scott*, 628 F. App'x at 902 (finding a settlement agreement "binding under Texas law" where "it include[d] a price term and a release of claims, which Texas law indicates as the essential components of settlement agreements" (citing *Padilla*, 907 S.W.2d at 460-61; *Stergiou*, 438 S.W.2d at 745; *CherCo Props., Inc. v. Law, Snakard & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App. – Fort Worth 1999))).

And "a binding settlement may be shown even if the parties contemplate that a more formal document memorializing their agreement will be executed at a later date." *Stergiou*, 438 S.W.2d at 748 (citing *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846; *Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 745-46 (Tex. 1988)).

"The critical issue for determining enforceability when the parties agree that some terms will remain open is whether the parties intended for their agreement to be a present binding (enforceable) agreement in the absence of an agreement on the remaining terms or whether they intended their agreement to have no legal significance until agreement on the remaining terms is reached." *Id.* at 748-49 (collecting cases).

Applying these legal standards to this case, the Court starts with the public

redacted version of the MSA, which (1) sets out "[t]he material terms of the settlement" to "resolv[e] all claims by and between the parties" in this case; (2) provides that "[t]he parties, through their attorneys, shall work together to prepare and finalize settlement documents in a timely manner" and "will work with the mediator to resolve any disagreements ... in connection with the preparation or substance of [those] documents"; and (3) concludes that "this agreement is binding and irrevocable," while "[t]he parties further agree to execute and deliver such additional agreements and documents as shall be necessary to carry out the purposes of this agreement." Dkt. No. 61-1 at 3-4.

And, without revealing confidentiality, the sealed version of the MSA lays out the amount of compensation and the structure of those payments in exchange for the dismissal of this action.

Had BANA moved the Court to enforce the MSA itself, the Court would have concluded that the MSA contains all essential terms to be considered a binding settlement at the time that it was executed and that the parties' agreement to either more formally memorialize their agreement or reach "additional agreements ... necessary to carry out the purposes of" the MSA should not be considered a condition precedent to their reaching a binding Rule 11 agreement, particularly where the MSA expressly provides that "this agreement is binding and irrevocable." Dkt. No. 61-1 at 4; *see, e.g.*, *Border Gateway, L.L.C. v. Gomez*, No. 14-10-01266-CV, 2011 WL 4361485, at *3-*4 (Tex. App. – Houston [14th Dist.] Sept. 20, 2011, no pet.) ("In deciding the

character of the mediation agreement, we must therefore determine whether the parties intended for the contemplated formal writing to be a condition precedent to the formation of a contract, or merely a memorial of an already enforceable contract. Normally, the intention of the parties is a question of fact, but where that intent is clear and unambiguous on the face of the agreement, it may be decided as a matter of law. We have previously held that a condition precedent to contract formation is 'clearly' evidenced where an agreement unequivocally provides that a party does not intend to be bound until the execution of a final contract. Other courts have similarly held that an intent not to be bound may be shown as a matter of law where an agreement expressly provides that its terms are 'non-binding' until the satisfaction of some other event. Courts have also recognized that an ambiguity may exist where an agreement stipulates that it is 'subject to legal documentation' or 'subject to securing documentation satisfactory to the parties.' In such cases where intent to be bound cannot be conclusively established, a fact issue arises for jury determination." (citations omitted)).

But BANA moves the Court to enforce the August 1 draft that is part of the parties' subsequent efforts to more formally memorialize the MSA.

Ztar and Haddad's opposition to the enforcement of the August 1 draft is, in material part, that "the Parties exchanged numerous comments and drafts"; that "[m]any terms were agreed to," but "certain terms, including what level of financial information [Ztar and Haddad] are required to provide on an ongoing basis has been

more contentious"; that "[t]he MSA does not contain any deadline by which the Parties must complete negotiation of the settlement documents, and [Ztar and Haddad] were at all times negotiating with [BANA] in good faith to reach a final settlement agreement and stipulated judgment so that this case could be dismissed." Dkt. No. 68 at 6-7.

First, BANA has not shown that the August 1 draft meets Rule 11's signed writing requirement.

While courts have held that an exchange of emails may count as a valid writing under Rule 11, *see, e.g.*, *Williamson*, 947 F. Supp. 2d at 708-09, BANA's motion does not provide the Court with the parties' exchange of emails leading up to the unsigned August 1 draft. In fact, Defendants attach to their opposition a subsequent draft of that agreement executed by Haddad. *See* Dkt. No. 68 at 10-24.

And, so, the record reflects that the parties failed to reach a binding agreement as to the August 1 draft agreement memorializing the MSA, and the Court will not – indeed, cannot – order that it be enforced as a binding Rule 11 agreement.

Nor will the Court elect to edit the August 1 draft agreement – inserting itself into the parties' negotiations and ultimately unsuccessful mediation – to dictate terms where the parties failed to reach agreement. *See, e.g.*, *Stergiou*, 438 S.W.2d at 744-45 ("While Texas courts favor validating transactions rather than voiding them, a court may not create a contract where none exists and generally may not add, alter, or eliminate essential terms." (footnote and citations omitted)).

To enforce the August 1 draft agreement would ignore that, although the parties reached an enforceable agreement through the terms of the MSA, subsequent negotiations between the parties did not result in an agreement – which BANA now seeks to enforce – that "is complete within itself in every material detail." *Padilla*, 907 S.W.2d at 460.

## II. The Court grants in part and denies in part the motion for summary judgment and grants BANA leave to file a second motion for summary judgment as to the amount of damages.

BANA moves for summary judgment on its claims for breach of contract against Ztar, as borrower, and Haddad, as guarantor.

But, as the party invoking the Court's diversity subject-matter jurisdiction "[a]t the summary judgment stage," BANA first "must provide evidence sufficient to support a jury finding of the citizenship of each" party, *Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order), as the Court further explained in the October 30, 2024 supplement to the scheduling orders, discussing this requirement as framed by recent decisions of the United States Court of Appeals for the Fifth Circuit, *see generally* Dkt. No. 64.

BANA responded to the October 30 order with evidence – a true and correct copy of its articles of association [Dkt. No. 65-1] and Ztar's articles of incorporation filed with the Texas Secretary of State [Dkt. No. 65-3] – that the Court finds sufficient to support jury findings as to its and Ztar's citizenships (North Carolina and Texas (and possibly Delaware), respectively), *see* 28 U.S.C. §§ 1332(a) & 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93

(2010).

As to Haddad's citizenship, BANA first provides evidence that Haddad resided in Dallas in 2020 and continued to reside in Dallas when he answered the operative complaint. *See* Dkt. No. 65 at 2-3; Dkt. No. 65-2; *compare* Dkt. No. 7, ¶ 5, *with* Dkt. No. 29, ¶ 5 (admitting that "Haddad is, upon information and belief, domiciled in Texas and a citizen of Texas. Haddad resides at [a specified address in] Dallas, Texas 75225 and may be served at said address or such other place as he may be found.").

"For natural persons, § 1332 citizenship is determined by domicile, which requires residency plus an intent to make the place of residency one's permanent home." *SXSW v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (citations omitted).

So, "[a]n allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'" *Id.* (quoting *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984) (per curiam)); *accord J.A. Maters Invs. v. Beltramini*, 117 F.4th 321, 322 (5th Cir. 2024) (per curiam).

Nor would an admission (or evidence) of residency alone satisfy BANA's burden at summary judgment. *Cf. Golden Spread Cooperative, Inc. v. Emerson Process Mgmt. Power & Water Solutions, Inc.*, 360 F. Supp. 3d 494, 504-05 & n.7 (N.D. Tex. 2019) (observing that the Fifth Circuit has "stated that it 'see[s] no reason why, for purposes of resolution of [a] motion for summary judgment,' courts 'cannot treat the factual allegations of the complaint as admissions or stipulations'" (quoting *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195 (5th Cir. 1988))).

But BANA's evidence as to Haddad goes to more than just where he resides. That evidence, including as to Haddad's ties to Ztar, addresses several of the factors that courts consider in determining an individual's domicile. That is,

> [i]n *Coury v. Prot*, the Fifth Circuit explained that, in determining a person's domicile, courts "must address a variety of factors" with "[n]o single factor [being] determinative." 85 F.3d 244, 251 (5th Cir. 1996). These "factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* (citations omitted).

*Union Pac. R.R. Co. v. Nuefuel TX LLC*, No. 3:23-cv-1206-L, 2024 WL 2970013, at *1 (N.D. Tex. June 11, 2024).

And BANA's evidence establishes that Haddad has a place of business (Ztar) in Texas, owns real estate and maintains a home in Texas, and therefore at least pays property taxes in Texas.

The Court consequently concludes that BANA has offered evidence sufficient to support a jury finding as the citizenship of each party.

And, so, the Court will move to the merits of BANA's motion for summary judgment.

If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The moving party must demonstrate that there are no genuine and material

fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

That is, "[w]hen the party moving for summary judgment also bears the burden of proving the claim, he must establish that there is no genuine dispute of material fact as to every element of its claim, so that the evidence is so overwhelming that he is entitled to judgment in his favor." *Turner v. Criswell*, No. 4:19-CV-226-ALM-CAN, 2020 WL 1901086, at *3 (E.D. Tex. Jan. 6, 2020) (cleaned up), *rec, adopted*, 2020 WL 613963 (E.D. Tex. Feb. 10, 2020).

"If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611 (S.D. Tex.) (cleaned up; quoting *Meecorp Cap. Markets LLC v. Tex-Wave Indus. LP*, 265 F. App'x 155, 158 (5th Cir. 2008) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)), *aff'd*, 634 F. App'x 439 (5th Cir. 2015) (per curiam).

And, on a plaintiff's motion seeking summary judgment in its favor on its own claims, the Court will "draw all reasonable inferences in favor of the non-moving party" – that is, in favor of the defendant. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

And, so, this "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007); *accord Wilson v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-

34-G-BN, 2020 WL 825819, at *7 (N.D. Tex. Jan. 17, 2020) ("[B]eyond peradventure" means "beyond doubt." (cleaned up)), *rec. adopted*, 2020 WL 821034 (N.D. Tex. Feb. 18, 2020).

But, on a plaintiff's motion on its own claim, "summary judgment is appropriate where the evidence would require a directed verdict." *Hernandez v. Trendy Collections, LLC*, No. 3:17-cv-2049-BN, 2018 WL 4103723, at *13 (N.D. Tex. Aug. 29, 2018) (cleaned up).

That is, a plaintiff may prevail on its claim on its own motion where, drawing all inferences in the defendant's favor and viewing the summary judgment in the light most favorable to the defendant, the evidence is "so overwhelmingly in favor of [the plaintiff] that no reasonable jury could [arrive] at a verdict other than that [the plaintiff] proved" every essential element of its claim against the defendant. *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F. Supp. 2d 493, 550 (N.D. Tex. 2011), *aff'd*, 709 F.3d 515 (5th Cir. 2013).

In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff because of the breach. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

But, because "a party is not bound by a contract procured by fraud," *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex.

-14-

1998) (collecting cases), the Court begins with the Defendants' fraud defenses to BANA's breach-of-contract claims.

> Defendants first assert that BANA
>
> falsely represented that Defendant Haddad's personal guarantee would be removed from the loan, as the personal guarantee language was included as part of a previous loan which had since been paid off. Specifically, on August 14, 2018, Andrew Walker, a Vice President and Relationship Manager of [BANA], emailed Defendant Haddad that "Per the personal guarantee language, we can remove it as when the original docs we [sic] done there was still a small amount remaining on the term loan that has since been paid off."

Dkt. No. 29, ¶ 43; Dkt. No. 44 at 42-44 (Aug. 14, 2018 email); *see also* Dkt. No. 44 (Haddad aff.), ¶ 7 ("While Walker and I negotiated the terms of the new credit deal and circulated the documents memorializing it, I noticed that the documents referenced that I would personally guarantee the debt ('Guaranty'). I objected to that and reminded Walker that was not supposed to be a part of the deal. In response, on August 14, 2018, Walker sent me an email in which he agreed and stated that Plaintiff would not require my personal guaranty under the new loan. Frankly, I trusted Walker and took this statement as the truth. After all, I thought that, from the bank's perspective, the Canadian time-deposit account should be sufficient security. I moved forward with the deal assuming the new line of credit would not entail a personal guaranty.").

Defendants further assert that BANA's claims are barred, in whole or in part, based on a conversation between Haddad and Walker "[o]n the afternoon of October 20, 2021," "during which Mr. Walker [falsely] represented that [BANA] would renew

the loan." Dkt. No. 29, ¶ 44; *see also* Dkt. No. 44 (Haddad aff.), ¶ 12 ("In the fall of 2021, as the latest amendment's January 2022 expiration date loomed, I met with Walker met at a Dallas restaurant to discuss another routine extension. During that conversation, Walker told me in no uncertain terms that Plaintiff would unquestionably extend the Loan Agreement for at least another year (at a minimum). He even said the next extension would include a more favorable interest rate. Once again, I assumed Walker was telling me the truth and took him for his word.").

"Fraud and fraudulent inducement are distinct causes of action from breach of contract." *Baldridge v. Birkes*, No. 3:99-cv-2687-L, 2001 WL 1296995, at *5 n.4 (N.D. Tex. Oct. 9, 2001) (citing *Formosa Plastics*, 960 S.W.2d at 46).

That is, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Formosa Plastics*, 960 S.W.2d at 46; *accord Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2011).

And "the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Id.* (citing *Dall. Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 239 (Tex. 1957)); *see also, e.g.*, *Stabilis Fund II, LLC v. Compass Bank*, No. 3:18-cv-283-B, 2018 WL 3618012, at *7 n.6 (N.D. Tex. July 30, 2018) ("Texas courts have suggested [ ] that fraudulent inducement makes voidable the entire contract." (citing *Dall. Farm Mach.*, 307 S.W.2d at 239-40)).

But Defendants do not assert a counterclaim for fraud. Nor does either side move for summary judgment on Defendants' fraud-based affirmative defenses.

-16-

So how does a fraud defense affect a motion for summary judgment as to breach of contract, such that it operates to create an issue of material fact to prevent the Court's granting judgment as to the breach claim?

The Fifth Circuit addressed a similar factual scenario in *Bailey v. Bailey*, 731 F. App'x 272 (5th Cir. 2018). In that case, the defendants asserted fraudulent inducement "as a ground for summary judgment" and "argued that a finding of fraudulent inducement would render the contract unenforceable," and the district court held that they were fraudulently induced and "effectively reform[ed] the contract," which was found to be error: "Reformation is not a remedy for fraudulent inducement. As a result, a judge does not have the power to make a contract to which the parties did not agree. A judge, or the parties for that matter, do not know what the effect of the withheld information would have been on the deal." *Bailey*, 731 F. App'x at 280 (cleaned up).

Instead, "the remedies for fraudulent inducement are either rescission of the contract or affirming the contract and recovering for damages flowing from the fraud." *Id.* at 280-81 (citations omitted).

But, where litigants "only assert[] fraudulent inducement as a defense, never as a claim for affirmative relief," "rescission [is] their only option." *Id.* at 281.

And, as BANA points out on reply, "Defendants are not seeking rescission – quite to the contrary, they are attempting to avoid altogether their obligation to return the benefits they received under the Loan Agreement." Dkt. No. 45, ¶ 6; *see*

*also id.*, ¶ 3 ("Defendants have pleaded neither a claim for damages nor a claim for rescission, nor have Defendants attempted to establish any damages for the alleged 'fraud' as the law requires. Regardless, seeking damages for fraud requires the party to 'stand to the bargain' and a party rescinding a contract must restore any benefits received pursuant to that contract so that the parties are placed in status quo ante." (citation omitted)).

Even so, "[b]ecause a contract is subject to avoidance on grounds such as fraud," *Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 927 (Tex. App. – Dallas 2009, no pet.) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997)), there is Texas authority that may support Defendants' position that, where there is evidence to support claims of fraud, it is at least premature to grant a motion for summary judgment on a breach-of-contract claim, *see id.* at 927-28 ("[I]n light of our disposition of the various fraud and misrepresentation claims, it is premature for us to consider CTX Mortgage's grounds for summary judgment on the Garzas' claims for breach of fiduciary duty and contract because those claims depend on the enforceability of the terms of the Loan Agreement. Accordingly, we conclude that summary judgment on the Garzas' claims for breach of fiduciary duty and contract was improper." (citation omitted)); *cf. Turner*, 2020 WL 1901086, at *3 (the "beyond peradventure"/"beyond doubt" standard that applies where a summary judgment movant "bears the burden of proving the claim" requires "that the evidence is so overwhelming that he is entitled to judgment in his favor").

But Defendants' claims of fraud do not, as a matter of law, prevent the Court's granting summary judgment on BANA's claims.

The essential elements of a fraud claim are that: (1) one side "made a material representation that was false"; (2) "it knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth"; (3) "it intended to induce [the other side] to act upon the representation"; and (4) that side "actually and justifiably relied upon the representation and thereby suffered injury." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).

So "[t]he fourth element has two requirements: the [claimant] must show that it actually relied on the [material] representation and, also, that such reliance was justifiable." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)).

And fraudulent inducement is simply "a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof," so, "with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase*, 62 S.W.3d at 798-99.

Starting with the 2018 email, to have a plausible fraud claim, Defendants must therefore show that reliance on the email was justifiable. And, "in determining

whether justifiable reliance is negated as a matter of law, courts must consider the nature of the parties' relationship and the contract." *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 563 (Tex. 2019) (cleaned up; quoting *Orca Assets*, 546 S.W.3d at 654 (quoting *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App. – Dallas 2012, no pet.))).

That is, "[i]n an arm's length transaction, the party alleging fraud must have exercised ordinary care to protect its own interests and cannot blindly rely on the defendant's reputation, representations, or conduct where the plaintiff's knowledge, experience, and background warrant investigation." *Id.* (citing *Orca Assets*, 546 S.W.3d at 654). "And when a party fails to exercise such diligence, it is 'charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated.'" *Id.* (quoting *Orca Assets*, 546 S.W.3d at 654 (quoting *AKB*, 380 S.W.3d at 232)).

Simply put, as a matter of law, a reasonably prudent person similarly situated to Haddad, himself a sophisticated businessperson who, as the evidence further reflects, was negotiating a contract with BANA with the assistance of his own counsel, *see* Dkt. No. 44 at 43 (email preceding the Aug. 14, 2018 email, where Haddad writes to Walker, "[p]lease see attached… from our legal"), would have read the personal guarantee before signing it and is charged with the knowledge of the guarantee's existence, particularly where the loan agreement was renewed multiple times, *see id.* at 6-7 (Haddad's aff.), ¶¶ 8-11 (testifying that he "was in a rush" and

"signed the documents without reading them"; that "Ztar utilized the line of credit for several years"; and that "[e]very year or so, as the Loan Agreement's expiration date approached, [BANA] and Ztar would execute amendments extending the term of the line of credit. This became routine. Altogether, Ztar and [BANA] executed a total of two loan extensions prior to 2022.").

The Court further finds that, absent further explanation, the email statement that Haddad relies on – that BANA "can remove" the personal guarantee, a statement made during the parties' negotiations and months before the written agreement was executed – does not qualify as a promise of future performance made with no intent of performing at the time that it was made. *Cf. Hoffman v. L & M Arts*, 838 F.3d 568, 579 n.9 (5th Cir. 2016) ("A promise of future performance 'made with no intention of performing at the time it was made' can substantiate a claim for fraudulent inducement." (quoting *Formosa Plastics*, 960 S.W.2d at 48)); *Allamon v. Acuity Specialty Prods., Inc.*, 877 F. Supp. 2d 498, 524 (E.D. Tex. 2012) ("Even if Allamon's fraud claim could not be properly considered a fraudulent inducement claim, her fraud claim still fails because Allamon has provided no evidence of Zep's lack of intent to perform future promises at the time it made those promises." (citation omitted)).

As to Defendants' second fraud defense, they contend that Walker orally promised Haddad in Fall 2021, prior to the January 2022 expiration of the loan agreement, that BANA would extend the agreement for at least another year. Instead, the parties signed an extension of the agreement only to March 31, 2022. *See*

Dkt. No. 41-1 at 32-35. And Haddad testifies that his reliance on Walker's oral statement caused him no "reason to seek a new lender to refinance Ztar's debt" and that had he "contacted alternative lenders at that early time, I am sure I would have had no problem finding a substitute lender for Ztar, which would have ended my relationship with [BANA] on favorable terms and which would have avoided this lawsuit entirely." Dkt. No. 44 at 7-8 (Haddad aff.), ¶ 13.

But, "[e]ven assuming that this representation was made, that it was material, and that [Walker/BANA] knew it was false at the time, [Defendants'] reliance upon this statement was not justified." *Bear Ranch, LLC v. HeartBrand Beef, Inc.*, No. 6:12-CV-14, 2014 WL 1052515, at *8 (S.D. Tex. Mar. 18, 2014).

That is because, "[u]nder Texas law, reliance upon an oral representation that is contradicted by the unambiguous terms of a written agreement is not justified as a matter of law." *Id.* (citing *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 330 (5th Cir. 2013) (per curiam) ("[Plaintiff's] reliance on oral representations by customer service representatives that were contradicted by the terms of the loan agreement and the notice of foreclosure was not reasonable as a matter of [Texas] law."); *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858-59 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) (en banc) ("[A] party who enters into a written contract while relying on a contrary oral agreement does so at its peril.")).

And, so, "the fraud must be something more than merely oral representations

-22-

that conflict with the terms of the written contract." *Schlumberger*, 959 S.W.2d at 179 (citing *Distrib. Inv. Co. v. Patton*, 110 S.W.2d 47, 48 (Tex. 1937)).

The Court also finds that the second fraud defense fails because it's based on Haddad's speculation alone. *See Ramsey v. Henderson*, 286 F.2d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." (cleaned up)); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (per curiam) ("[W]e review the facts and draw all inferences most favorable to the nonmovant." But "mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." (citations omitted)).

Accordingly, the Court moves to whether BANA has shown beyond doubt that the Court should grant judgment as a matter of law on its breach claims.

And BANA has shown beyond doubt that both Ztar and Haddad are liable for the breaches alleged. *See generally* Dkt. No. 41-1. And, while Defendants do not contest liability, they do assert that BANA has not proven the amount owed under the contract, *see, e.g.*, Dkt. No. 43 at 20-21, and, so, they contest the measure of damages but not that BANA sustained damages by their breaches, *see also* Dkt. No. 45, ¶ 31 ("Defendants' cases from other jurisdictions do not stand for the proposition that the Court must deny the Motion entirely, even if the Court finds that the evidence supporting the damages calculation is not presently sufficient. To the

contrary, the courts in those cases granted judgment for the plaintiff on all issues except for the limited question of the calculation of damages, permitting the plaintiff an opportunity to supplement on that issue. *See* Dkt. No. 43, ¶¶ 60-61. At the very least, the result here should be the same. Defendants admit to signing the Loan Agreement, its amendments, and the Guaranty. Dkt. No. 29, ¶¶ 11 & 13. Defendants admit 'that certain payments have not been made.' *Id.*, ¶¶ 18, 25, & 35. Liability is therefore admitted and summary judgment should be granted. If the Court deems necessary, BANA can submit a more detailed calculation of the damages in short order – Defendants in no way suggest that a trial on this issue is required, and it plainly is not." (cleaned up)).

In sum, "[BANA] has established, beyond peradventure, all of the essential elements of its breach of contract claim to warrant judgment in its favor" as to Defendants' liability." *Coim USA Inc. v. Sjobrand Inc.*, 663 F. Supp. 2d 684, 689 (N.D. Tex. 2023) (citing *Fontenot*, 780 F.2d at 1194).

And, as to the amount of damages, the Court agrees with BANA to the extent that it finds that the most efficient route going forward is to grant BANA leave under Local Civil Rule 56.2(b) to file a second motion for summary judgment by **March 31, 2025**.

## Conclusion

The Court DENIES the motion to enforce settlement [Dkt. No. 61]; GRANTS IN PART and DENIES IN PART the motion for summary judgment [Dkt. No. 41], to

the extent that summary judgment is granted as to Defendants' liability but not as to the amount of damages; and GRANTS Plaintiff Bank of America, N.A. leave to file, by **March 31, 2025**, a second motion for summary judgment as to damages.

SO ORDERED.

DATE: February 27, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE